**PUBLISHED**

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **12th** *day of* **February, 2019**.

Thomas Robert Lienau,                                                                                      Appellant,

 against          Record No. 0685-17-4
                  Circuit Court No. FE-2015-1303

Commonwealth of Virginia,                                                                           Appellee.

Upon Rehearing En Banc

Before Chief Judge Decker, Judges Humphreys, Petty, Beales, Alston, Huff, Chafin, O'Brien, Russell, AtLee and Malveaux

Peter D. Greenspun (Anastasia T. Kranias; Greenspun Shapiro PC, on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R. Herring, Attorney General, on briefs), for appellee.

On September 11, 2018, a panel of this Court reversed the judgment of the trial court and remanded for further proceedings. See Lienau v. Commonwealth, 69 Va. App. 254 (2018). A dissenting opinion was filed in the panel decision. We subsequently granted the Commonwealth's petition for rehearing *en banc*, stayed the mandate of the panel decision, and reinstated the appeal on the docket of this Court.

Upon such rehearing *en banc*, the stay of this Court's September 11, 2018 mandate is lifted, the judgment of the trial court is reversed, and the case is remanded to the trial court for the reasons stated in the panel's majority opinion.

Judges Humphreys, Petty, Beales, Alston, Huff, Chafin, and Russell voted to reverse the judgment of the trial court and remand the case to the trial court in accordance with the majority opinion of the panel.

Chief Judge Decker, Judges O'Brien, AtLee, and Malveaux voted to affirm the judgment of the trial court for the reasons stated in the dissenting opinion of the original panel decision.

It is ordered that the trial court allow the court-appointed attorneys for the appellant, an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

PUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **16th** *day of* **October, 2018**.

Thomas Robert Lienau,                                                                          Appellant,

against          Record No. 0685-17-4
                 Circuit Court No. FE-2015-1303

Commonwealth of Virginia,                                                              Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Huff, Judge Humphreys, Petty, Beales, Alston,
Chafin, Decker, O'Brien, Russell, AtLee and Malveaux

On September 25, 2018 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on September 11, 2018, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel. In addition, four printed copies of each brief shall be filed. It is further ordered

that the appellee shall file an electronic version and four additional copies of the appendix previously filed in this case.[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Petty, Malveaux and Senior Judge Annunziata
Argued at Alexandria, Virginia

PUBLISHED

THOMAS ROBERT LIENAU

v.        Record No. 0685-17-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
SEPTEMBER 11, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Peter D. Greenspun (Anastasia T. Kranias; Greenspun Shapiro PC,
on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellee.


Thomas Robert Lienau heard an intruder in his home at night and armed himself.  When

he encountered the intruder, Lienau fired one shot and killed him.  A jury convicted Lienau of

involuntary manslaughter.[1]  Lienau argues on appeal that the trial court erred in refusing to give

the jury an instruction on self-defense.  We agree.  Accordingly, we reverse and remand.

I. BACKGROUND

Usually, this Court "review[s] the evidence in the light most favorable to the

Commonwealth, the prevailing party in the trial court." Dawson v. Commonwealth, 63 Va. App.

429, 431, 758 S.E.2d 94, 95 (2014).  However, "[w]hen reviewing a trial court's refusal to give a

proffered jury instruction, we view the evidence in the light most favorable to the proponent of

---

[1] Lienau was originally indicted for murder.  The jury acquitted him of that charge and
convicted him of the lesser-included offense of involuntary manslaughter.

the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002). We must therefore view the evidence in the light most favorable to Lienau.[2]

Thomas Robert Lienau owned a small townhouse, where he resided in the basement. Near his bed, he kept a lever-action rifle that he had received for his twelfth birthday. He kept the rifle unloaded, but attached two bullets to the rifle stock with an elastic band. He later explained to investigators that he kept the rifle near his bed "for self-defense, for anyone who breaks in." The main floor of the home had the living areas, and the second floor contained bedrooms, one of which he rented to J.R. Najim. J.R. owned a gun, which he sometimes kept in his second-floor room. Lienau did not permit J.R.'s brother, Mohammed Najim, in the house because, as Lienau described him, he was "out of control," "wacked out," "always wasted," and "always in trouble." Nevertheless, Lienau had once found Mohammed asleep on the living room couch without permission. Lienau "kicked him out" and warned J.R. that Mohammed was not to be in the house. On another occasion, Mohammed entered the home without permission and came down the stairs to Lienau's living area in the basement. This "scared [Lienau] to death."

---

[2] It is this standard of review that constitutes our foundational disagreement with the dissent. Lienau did not testify during the guilt phase of the trial. The majority of the facts surrounding the actual shooting come from statements Lienau made to the police soon after the shooting and during a recorded two-hour interview at the police station. The dissent has searched these interviews for statements by Lienau that, when viewed in a light most favorable to the Commonwealth, would support a jury's rejection of his self-defense claim. However, as we note below, that is not our task in reviewing this appeal. We must review the facts, and the reasonable inferences that might be drawn from those facts, looking for evidence that would support Lienau's requested instruction. For instance, while the dissent views his statement to the police "No, No, [the threat] happened earlier" to conclude there was no imminent threat at the time of the shooting, *infra* 19, we consider that statement of a previous threat in conjunction with the nighttime home invasion as evidence that would support a reasonable apprehension of bodily harm. Thus, while we have no quarrel with the dissent as to the law of self-defense, we believe that the facts, when viewed throught the appropriate prism, are sufficient to warrant allowing the jury, and not the trial judge or this Court, to determine whether Lienau acted in self-defense.

He told Mohammad, "Don't you ever come in this house again. You're not invited here; I've told you that before. Get out!"

On the evening of July 16, 2015, Lienau received a phone call from J.R. asking him to come to J.R.'s second-floor room to mediate a fight between J.R. and Mohammed, who, unbeknownst to Lienau, had come to visit J.R. J.R. and Mohammed continued yelling and threatening to kill each other, so Lienau told them to leave the house. Lienau believed Mohammed was high on drugs at the time.[3] After J.R. and Mohammed left the house at about 5:50 p.m., Lienau locked the front door. About a half an hour later, Mohammed returned and began to pound on Lienau's front door and to kick it with his bare feet. Mohammed was causing a disturbance in the neighborhood, and a neighbor sent Lienau a text message that Mohammed was pounding the door and incessantly ringing the doorbell, really upset because the door was locked. Lienau sent a text message to J.R. saying that he needed to come get Mohammed. Finally, the pounding stopped, and Lienau believed Mohammed had left.

Shortly before 10:00 p.m., Lienau was home alone in his basement when he heard a loud bang and footsteps on the main floor. He carried the unloaded rifle up the basement stairs to investigate. Although he had fully locked the deadbolt earlier, he now saw the door open. An intruder had burst into the home with so much force that pieces of door trim and door frame lay in the living room with the metal deadbolt strike plate still attached. Lienau took the two bullets from the elastic band, loaded one in the rifle, and put the other in his pocket. Although Lienau had not yet seen the intruder, he strongly suspected the intruder was Mohammed.

With his now-loaded rifle, Lienau approached the stairwell to the second floor. Lienau saw Mohammed come from the second floor to the top of the stairs. Lienau aimed the rifle at

---

[3] The medical examiner testified at trial that Mohammed had used cocaine the day he died.

Mohammed's legs, wanting to scare him. Lienau was shaking badly and, although he said he did not intend to pull the trigger, the rifle discharged. The bullet travelled upward through Mohammed's left calf and through his right thigh, ending in the stair tread of the top step, below the level of the second floor. Although Lienau rendered first aid, Mohammed died shortly thereafter from his wound.

Both immediately after the shooting and in a statement he gave police at the police station, Lienau maintained that he never intended to pull the trigger. He said it happened "unfortunately too fast" "and [he] wasn't thinking." He explained that he "didn't think about it that deeply" at the time but was "try[ing] to piece some of it" together during the interview. He said, "With an intruder and the door broken in . . . I just saw red." He said he was in a "rage" and shaking so much he would not have been able to hit a target if he had been aiming. He admitted that he was upset at Mohammed's actions earlier that evening, especially after he had already kicked him out. He said, "I let my temper, my emotions, get the better of me."

The Commonwealth charged Lienau with murder. At the conclusion of the trial, Lienau moved to strike the evidence on the basis that the Commonwealth had failed to prove the shooting was not an accident. The trial court denied the motion. Lienau then requested a jury instruction on the law of self-defense, arguing that Lienau was in a "frightening and self-defense situation." The trial court refused the instruction. The jury found Lienau guilty of involuntary manslaughter. During sentencing, the trial court sustained the Commonwealth's objection to certain evidence and cross-examination by Lienau. This appeal followed.

II.  ANALYSIS

A.  THE TRIAL COURT ERRED IN REFUSING THE SELF-DEFENSE INSTRUCTION

1.  Standard of Review

This Court's standard of review where the trial court refuses a jury instruction is well-established.  "As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court."  King v. Commonwealth, 64 Va. App. 580, 586, 770 S.E.2d 214, 217 (2015) (*en banc*) (alterations in original) (quoting Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009)).  "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion."  Id. (quoting Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*)).

However, "if there is evidence in the record to support the defendant's theory of defense, the trial judge *may not refuse to grant a proper, proffered instruction*."  Id. at 587, 770 S.E.2d at 218 (quoting Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991)).  "If a proffered instruction finds any support in credible evidence, . . . its refusal is reversible error."  Id. (quoting McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975)).  "Additionally, '[w]here the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge *must* instruct the jury as to both theories.'"  Id. (alteration in original) (quoting Foster, 13 Va. App. at 383, 412 S.E.2d at 200).  The theory, however, must find support in the evidence.  "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by [more than a scintilla of] evidence."  Id. (alteration in original) (quoting Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990)).  "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a

proposition against the 'other credible evidence that negates' it." Id. (omission in original)

(quoting Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999)).

2. The Law of Self-Defense

A person's right to defend himself in his own home has strong roots in this

Commonwealth.

> In the early times our forefathers were compelled to protect themselves in their habitations by converting them into holds of defense: and so the dwelling house was called the castle. To this condition of things, the law has conformed, resulting in the familiar doctrine that while a man keeps the doors of his house closed, no other may break and enter it, except in particular circumstances to make an arrest or the like—cases not within the line of our present exposition. From this doctrine is derived another: namely, that the persons within the house may exercise all needful force to keep aggressors out, even to the taking of life.

Fortune v. Commonwealth, 133 Va. 669, 687, 112 S.E. 861, 867 (1922) (distinguishing between

an invited guest and one that enters forcefully) (quoting 1 Bish. New Cr. Law § 857, 858 (3th

ed.)), cited with approval in Hines v. Commonwealth, 292 Va. 674, 679-80, 791 S.E.2d 563, 565

(2016).

The Supreme Court has recognized that "[a] defendant may always act upon reasonable

appearance of danger, and whether the danger is reasonably apparent is always to be determined

from the viewpoint of the defendant at the time he acted." McGhee v. Commonwealth, 219 Va.

560, 562, 248 S.E.2d 808, 810 (1978). "In the context of a self-defense plea, 'imminent danger'

is defined as 'an immediate, real threat to one's safety . . . .'" Commonwealth v. Sands, 262 Va.

724, 729, 553 S.E.2d 733, 736 (2001) (omission in original) (quoting Black's Law Dictionary

399 (7th ed. 1999)). "There must be . . . some act menacing present peril . . . [and] the act . . .

must be of such a character as to afford a reasonable ground for believing there is a design . . . to

do some serious bodily harm, and imminent danger of carrying such design into immediate

execution." Id. (alterations in original) (quoting Byrd v. Commonwealth, 89 Va. 536, 539, 16

S.E. 727, 729 (1893)).  "The 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life."  Id.  "There must [also] be some overt act indicative of imminent danger at the time."  Id. (alteration in original) (quoting Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935)).  "The requirement of an overt act indicative of imminent danger ensures that the most extreme recourse, the killing of another human being, will be used only in situations of necessity."  Id. at 731, 553 S.E.2d at 737.

"Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident."  Hines, 292 Va. at 679, 791 S.E.2d at 565.  "Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself."  Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977) (quoting Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958)).  Furthermore, "when a party assaults a homeowner in his own home, as in this case, the homeowner has the right to use whatever force necessary to repel the aggressor."  Hines, 292 Va. at 679, 791 S.E.2d at 565.

Accordingly, the model jury instruction for self-defense, which is the instruction requested by Lienau, instructs jurors,

> If you believe that the defendant was without fault in provoking or bringing on the difficulty, and you further believe that:
>
> (1) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of being killed or that he was in imminent danger of great bodily harm;
>
> and
>
> (2) he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself

from the perceived harm, then the killing was in self-defense, and
you shall find the defendant not guilty.

Model Jury Instrs.—Crim. No. 33.800.[4]

### 3. The Trial Court Erred in Not Giving the Instruction

In applying the legal principles of self-defense, we recognize that the issue before this Court is not whether Lienau acted in self-defense. That is for the jury alone to decide. Rather, the issue before us is whether there was sufficient credible evidence in the record, viewed in the light most favorable to Lienau, to support the defendant's right to have the jury instructed on these principles. See King, 64 Va. App. at 587, 770 S.E.2d at 218. We conclude there was.

Here, from Lienau's viewpoint, Mohammed's overt act of breaking into Lienau's home in the dark of night could be viewed by a jury as "indicative of imminent danger at the time." Sands, 262 Va. at 729, 553 S.E.2d at 736. The act appeared even more menacing, from Lienau's viewpoint, because Mohammed broke in with such force that he severely damaged the dead-bolted front door. The violence of the break-in "afford[ed] [Lienau] a reasonable ground for believing there [was] a design [by Mohammed] to do some serious bodily harm, and imminent danger of [his] carrying such design into immediate execution." Id. Lienau's response of loading one bullet into the rifle he kept for self-defense was credible evidence that he "reasonably feared death or serious bodily harm at the hands of his victim." See Hines, 292 Va. at 679, 791 S.E.2d at 565. Within seconds of seeing Mohammed, who had earlier threatened to kill Lienau's tenant, Lienau pulled the trigger. This evidence of Mohammed's overt act of breaking through the door, Lienau's immediate response of loading the rifle he kept for self-defense, followed immediately by his confronting of the intruder constituted "more than a

---

[4] The Commonwealth does not suggest that the instruction Lienau requested was an incorrect statement of the law or that it was duplicative of the other instructions.

mere scintilla" of credible evidence that Lienau had a "reasonable apprehension of death or great bodily harm to himself."[5]  Yarborough, 217 Va. at 975, 234 S.E.2d at 290 (quoting Bailey, 200 Va. at 96, 104 S.E.2d at 31); see Dodson v. Commonwealth, 159 Va. 976, 167 S.E. 260 (1933).

This does not mean that the jury *would* find Lienau had a reasonable apprehension of harm or that the amount of force he used *was* reasonable.  It does mean, however, that Lienau was entitled to have a self-defense instruction given to the jurors to guide them in their deliberations.  It was for the jury to determine, based on all the evidence, whether Lienau committed an unlawful homicide or a homicide justified by self-defense.

The Commonwealth argues that the instruction was not warranted because Lienau never claimed he was afraid; he said he was "raging."  Lienau stated to the police that "with an intruder and the door broken in," before he knew who the intruder was, he "just saw red."  He explained he "let [his] temper, [his] emotions get the better of [him]."  When asked what he felt at the moment of confrontation, he responded, "Rage."  However, it was for the jury to determine how

_____

[5] The dissent concludes that Lienau's statements describing the incident "unequivocally negate the finding that he perceived an imminent threat at that time."  However, Lienau did not testify and therefore gave no statements under oath.  See Bolyard v. Commonwealth, 11 Va. App. 274, 277, 397 S.E.2d 894, 896 (1990) (affirming trial court's refusal to give an accidental homicide instruction where defendant testified "he deliberately shot the victim"); see also Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922) ("No litigant can successfully ask a court or jury to believe that he has not told the truth.  His statements of fact and the necessary inferences therefrom are binding upon him.").

Instead, Lienau's account of the shooting came from hearsay statements he made to police while he was "distraught" and was trying to "piece together" the events that had occurred.  Nothing prevented the jury from concluding Lienau's statements to police were incomplete or inaccurate.  For example, although Lienau stated during the interview that he believed Mohammed was on the top step and fell down the stairs after he was shot, as the dissent notes, the jury could believe the crime scene detective's testimony that it was "highly, highly, extremely improbable" that Mohammed was standing on the top step when shot.  Additionally, although Lienau did not state to police that Mohammed displayed a weapon, the evidence showed Lienau was aware the tenant kept a weapon on the second floor.  In the light most favorable to Lienau, the jury could conclude Lienau was aware of the possibility Mohammed had acquired that weapon.  And, of course, the jury could conclude that the trauma, stress, and emotion of the event affected Lienau's recollection.

- 9 -

the events reasonably appeared to Lienau and what weight to give Lienau's statements to police. Epps v. Commonwealth, 66 Va. App. 393, 403-04, 785 S.E.2d 792, 797 (2016) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). Although Lienau never used the word "fear" to describe his reaction to finding the broken door and, subsequently, the intruder, this does not preclude the jury from so finding. It was the factfinder's job to determine what Lienau meant by "rage" and whether he also acted in reasonable fear of imminent danger.

In summary, the jury did not have to credit Lienau's statements to police, nor his theories of defense. There was evidence to support the Commonwealth's theory that Lienau committed an unlawful homicide. However, credible evidence also supported Lienau's theory that he was reacting to a "frightening and self-defense situation." "Where the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge *must* instruct the jury as to both theories." King, 64 Va. App. at 587, 770 S.E.2d at 218. Accordingly, the trial court erred by refusing the requested self-defense instruction to guide the jury in its deliberations.

### 4. The Doctrine of Harmless Error[6]

Concluding that the trial court erred, however, does not end our analysis. "Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" Commonwealth v. White, 293 Va. 411, 420, 799 S.E.2d 494, 498 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 200, 776 S.E.2d 265, 269 (2015)). This Court will not reverse a trial court for errors "that were harmless to the ultimate result." Carter v. Commonwealth, 293 Va. 537, 544, 800 S.E.2d 498,

---

[6] Subsequent to oral argument, this Court asked the parties for supplemental briefing addressing whether an error by the trial court in not giving the proposed instruction would nonetheless be harmless in view of the jury's involuntary manslaughter conviction.

502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)). It is "'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless' lest they 'retreat from their responsibility, becoming instead "impregnable citadels of technicality.""" White, 293 Va. at 420, 799 S.E.2d at 498 (quoting United States v. Hasting, 461 U.S. 499, 509 (1983)). Because we are reviewing the effect the error may have had on "the ultimate result," we focus on Lienau's conviction of involuntary manslaughter, not on the charge of murder, for which he was initially charged but ultimately acquitted. See Carter, 293 Va. at 544, 800 S.E.2d at 502.

The test for determining if a non-constitutional error is harmless is as follows:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). "Non-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" Bell v. Commonwealth, 47 Va. App. 126, 140 n.4, 622 S.E.2d 751, 757 n.4 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986)). "Thus, where the reviewing court is able to determine that the trial court's error in failing to instruct the jury could not have affected the verdict, that error is harmless." Turner v. Commonwealth, 23 Va. App. 270, 276, 476 S.E.2d 504, 507 (1996). "By contrast, where it is impossible to determine from the verdict whether the jury would have necessarily rejected a [defense] on which it was not instructed, error in refusing to instruct on that [defense] is not harmless." Id.

- 11 -

The question before us, then, is whether we can conclude, in light of the jury's acquittal of Lienau of murder and his conviction of involuntary manslaughter, that the trial court's failure to instruct the jury regarding self-defense "could not have affected [that] verdict." Id. In other words, whether the law of self-defense could provide a legal justification for the offense of involuntary manslaughter.

"Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional, particularly where the facts of the case are not such as would make such law applicable." Braxton v. Commonwealth, 195 Va. 275, 277-78, 77 S.E.2d 840, 841 (1953).

> The defense that a killing was accidental presents a different issue from a claim that a killing was done in self-defense . . . . In making [a self-defense] plea a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.

McGhee, 219 Va. at 562, 248 S.E.2d at 810. For example, where an accidental discharge of a firearm occurs during negligent handling of a firearm, the law of self-defense is not applicable.

However, where the facts of the case *are* such as would make such law applicable, "[h]omicide is excusable on the ground of accident if it appears that the defendant was acting lawfully in self-defense and the victim was shot by accident through the unintentional discharge of a gun." 40 C.J.S. Homicide § 180 (2014) (quoting State v. Goodson, 440 S.E.2d 370, 372 (S.C. 1994)).

> As we have said, in proper cases the assaulted party has the right to meet force with force; and if, in a proper defense, death results to the assailant, the killing may be excusable without a belief on the part of the assaulted party that it was necessary for his own safety. In such cases the defense is purposely made, but the killing is not purposely done. It is simply the result of the defense.

- 12 -

Valentine v. Commonwealth, 187 Va. 946, 954, 48 S.E.2d 264, 268 (1948) (quoting Runyan v. State, 57 Ind. 80 (1877)).

> Accused is entitled to an acquittal where he was lawfully acting in self-defense and the death of his assailant resulted from accident or misadventure, as where in falling he struck or overturned an object and thereby received injuries resulting in his death, or where in a struggle over the possession of a weapon it was accidentally discharged.

Id. at 953, 48 S.E.2d at 268 (quoting 40 C.J.S., Homicide § 112c [current § 180] (1948)).

Accordingly, "[t]he mere fact that the defendant did not, at the time of the killing, believe such killing was necessary does not divest him of the right to set up self-defense if the killing was not intended by him, but was incidental to his excusable defense of himself when assaulted."[7] Id. (quoting Wharton's Crim. Law Vol. 1, p. 851 (12th ed.)); Nebraska v. Drew, 344 N.W.2d 923, 926 (Neb. 1984) ("[S]elf-defense is available to the accused who accidentally kills his assailant while properly exerting force to assure his own safety."); New Mexico v. Gallegos, 22 P.3d 689, 692 (N.M. Ct. App. 2001) ("Homicide is justifiable if the killer acted reasonably in self-defense."). Thus, an accused would be "entitled to an acquittal if the death of [victim] resulted from an accident or misadventure which occurred while the defendant was in the act of defending or preparing to defend himself against an unprovoked assault." Farrow v. Commonwealth, 197 Va. 353, 363, 89 S.E.2d 312, 318 (1955).

In arguing that any error has been rendered harmless by the verdict, the Commonwealth correctly states that ordinarily in making a self-defense plea, a "defendant implicitly admits the

---

[7] The dissent only discusses self-defense as it applies to an intentional homicide and presumes, contrary to the jury's verdict, that Lienau deliberately fired the rifle. Thus, the dissent considers that "the appellant's putative act of self-defense was not the loading of his rifle—it was the firing of the bullet that struck Mohammed." *Infra* 18. However, Farrow v. Commonwealth, 197 Va. 353, 363, 89 S.E.2d 312, 318 (1955) (emphasis added), makes it clear that in the case of an accidental killing, which the jury found to have occurred here, a defendant may claim self-defense if the killing occurred "while the defendant was in the act of defending or *preparing to defend* himself against an unprovoked assault."

killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." Sands, 262 Va. at 729, 553 S.E.2d at 736 (quoting McGhee, 219 Va. at 562, 248 S.E.2d at 810). Despite this generalization, however, "the evidence and inferences deducible therefrom may be such at times as to justify the submission of whether or not the killing was in self-defense, as well as whether or not it was accidental. In such case, if either inference may be reasonably drawn, accused is entitled to have both issues submitted to the jury." Jones v. Commonwealth, 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954). "Since there was evidence that the killing was in self-defense as well as accidental, the defendant was entitled to have both issues submitted to the jury." Farrow, 197 Va. at 363, 89 S.E.2d at 318; see also King, 64 Va. App. at 587, 770 S.E.2d at 218 ("If a proffered instruction finds any support in credible evidence, . . . its refusal is reversible error." (quoting McClung, 215 Va. at 657, 212 S.E.2d at 293).

While the jury here was instructed on the defense of accident and the unintentional offense of involuntary manslaughter, it was not given the opportunity to determine if Lienau was acting lawfully in self-defense when the shooting occurred. Lienau was "entitled to an acquittal [if] he was lawfully acting in self-defense and the death of his assailant resulted from accident." Valentine, 187 Va. at 953, 48 S.E.2d at 268. Again, we need not conclude whether the evidence was sufficient to show Lienau *was* acting lawfully in self-defense. We conclude only that there was credible evidence in the record that entitled Lienau to the jury instruction and that failure to give the instruction was not harmless because "portions of the evidence were in controversy, and . . . [the jury] could have found appellant not guilty [of involuntary manslaughter] if properly instructed on justifiable self-defense." Bell, 66 Va. App. at 489, 788 S.E.2d at 277. Accordingly, we cannot say that the error would not have affected the ultimate verdict.

Lienau argues the trial court erred in denying his renewed motion to strike the evidence on the basis that the "Commonwealth's evidence did not prove beyond a reasonable doubt that [Mohammed's] death was not accidental. Therefore, the evidence was insufficient to find Mr. Lienau guilty of involuntary manslaughter." Lienau specifically referenced in his argument to the trial court a model jury instruction, which was later given to the jury, which stated, "Where a defense is that the death of [Mohammed] was an accident, Thomas Lienau is not required to prove this fact. The burden is on the Commonwealth to prove beyond a reasonable doubt that the death was not accidental." Our response to this argument is simple; although the trial court declined to find that the Commonwealth failed to meet its burden, the jury did. The jury acquitted Lienau of murder and voluntary manslaughter, the two offenses requiring proof of an intentional killing, and convicted him instead of involuntary manslaughter, which only requires proof of an accidental killing. See Noakes v. Commonwealth, 280 Va. 338, 345, 699 S.E.2d 284, 288 (2010) ("[The common law crime of involuntary manslaughter is] 'the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act.'"). Thus, to the extent that Lienau argues that the evidence was insufficient to prove the shooting was intentional, the jury agreed and convicted him of involuntary manslaughter. Because the argument has been effectively rendered moot by the verdict, we reject Lienau's argument that the trial court erred in denying the motion to strike.[8]

---

[8] Lienau's only sufficiency argument on appeal regards the sufficiency of the evidence to prove the shooting was not an accident. He did not argue to the trial court that the evidence was insufficient to prove Lienau's actions were criminally negligent, as required for a conviction of the lesser-included offense of involuntary manslaughter. That sufficiency argument is not before us, and we do not consider it. See also Commonwealth v. Bass, 292 Va. 19, 32, 786 S.E.2d 165, 172 (2016) ("It is a venerable principle of double jeopardy jurisprudence that the successful

## C. EXCLUDED EVIDENCE AND CROSS-EXAMINATION DURING SENTENCING

Finally, in light of our decision, we need not address Lienau's last assignment of error. Lienau argues that the trial court erred in limiting his cross-examination of sentencing witnesses and by excluding specific evidence during sentencing. He argues that, as a result, his inability to adequately impeach the Commonwealth's witnesses led to a higher sentence. "Because the case will be remanded and the evidence well may be presented differently upon a new trial, we will not give an advisory opinion regarding whether [the] evidence . . . would be admissible if proffered again." Commonwealth v. Cary, 271 Va. 87, 102, 623 S.E.2d 906, 914 (2006).

## III. CONCLUSION

Virginia has long recognized the castle doctrine; a homeowner has the right to "meet force with force" when an intruder breaks into his or her home. Valentine, 187 Va. at 954, 48 S.E.2d at 268. If while lawfully preparing to defend himself in his home, the homeowner accidentally kills the intruder, he still may be entitled to acquittal on the grounds of self-defense. Id. "In such cases the defense is purposely made, but the killing is not purposely done. It is simply the result of the defense." Id. It was the jury's task to determine if this was such a case. Because there was credible evidence to support Lienau's theory of self-defense, the trial court erred in refusing the requested instruction. We therefore reverse his conviction of involuntary manslaughter and remand for a new trial on that offense, if the Commonwealth is so inclined.

Reversed and remanded.

---

appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." (quoting Montana v. Hall, 481 U.S. 400, 402 (1987))).

Malveaux, J., concurring, in part, and dissenting, in part.

I concur in the majority opinion that appellant's sufficiency argument is without merit. However, I respectfully dissent from the majority holding that the trial court erred in refusing appellant's proffered jury instruction. While the law of self-defense in Virginia has a long and estimable history, the right to self-defense, as the majority acknowledges, is not unbounded. Our case law still requires that for a defendant justifiably to have exercised that right, and for a self-defense instruction to be given, there must be evidence of "some overt act indicative of imminent danger at the time" the defendant used force in self-defense. Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001) (quoting Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935)). Further, that imminent danger must be "reasonably apparent [as] judged from the viewpoint of the defendant at the time of the incident." Hines v. Commonwealth, 292 Va. 674, 679, 791 S.E.2d 563, 565 (2016).

The majority is correct in noting that Mohammed broke and entered appellant's home with force and that appellant loaded his rifle upon seeing the signs of forced entry and suspecting that Mohammed was probably responsible. However, those developments preceded the fatal incident. After appellant loaded his rifle, he went to the foot of the stairs to the second floor and called out "something like [']is that you, punk,['] or . . . [']mother fucker.[']" Mohammed then appeared at the top of the stairs and replied, "I told you, man, I'm getting my shit."[9] At that point, appellant had his rifle pointed at Mohammed with the intention of scaring him. However, the rifle discharged.

---

[9] Appellant's neighbor had encountered Mohammed earlier that evening, while Mohammed was pounding on appellant's door. He testified that Mohammed was wearing shorts but no shirt or shoes. The neighbor sent a text message to appellant that Mohammed "doesn't have his shoes or stuff. He just wants to pick up his stuff no trouble and leave." Appellant replied by text that Mohammed could return for his things the next day.

The majority concludes there was sufficient evidence to support giving a self-defense instruction, because Mohammed's forceful breaking and entering of appellant's home was evidence of an overt act indicative of an imminent danger to appellant. Further, there was evidence that this act produced in appellant a reasonable apprehension of death or great bodily harm, because appellant responded to the signs of a break-in by loading his rifle for self-defense. But appellant's putative act of self-defense was not the loading of his rifle—it was the firing of the bullet that struck Mohammed. That was the "incident" at the time of which there must be more than a scintilla of evidence that appellant reasonably apprehended an imminent danger, based upon an overt act by Mohammed at that time, in order to justify a self-defense jury instruction and appellant's use of force.

As evidence of what transpired when appellant shot Mohammed, we have only appellant's own statements and the forensic material gathered and testified to by police. Appellant never stated that Mohammed made threatening gestures or furtive movements during this encounter. He never stated that Mohammed displayed a weapon, or that Mohammed was moving toward him when he fired his rifle. The crime scene detective who investigated the shooting testified that he could not say whether Mohammed was stationary or in motion when he was shot. Appellant stated only that "[o]nce I shot [Mohammed] he fell down the stairs." These facts must be viewed in the light most favorable to appellant, with cognizance that self-defense requires evidence of an overt act threatening imminent—*i.e.*, immediate—death or great bodily harm. Based upon the facts of the shooting, I can find no scintilla of evidence of an overt act by Mohammed that would justify giving a self-defense instruction.

Further, when examining the encounter through appellant's viewpoint, I can find no scintilla of evidence that an imminent danger of death or great bodily harm was reasonably apparent to him when he fired his rifle. Appellant's own statements to police make clear that he

- 18 -

did not perceive an immediate threat from Mohammed at that moment. When questioned by detectives, appellant did describe the contentious argument between J.R. and Mohammed and Mohammed's behavior outside his front door that evening. He also told the detectives about past encounters with Mohammed that scared or otherwise upset him, and his belief that Mohammed was using drugs. However, the detectives also questioned appellant about the immediate circumstances at the time he shot Mohammed. When asked, "Is there anything that [Mohammed] did, like other than just break the door and be in the house? Was there . . . was there a threat? Was there an immediate threat at all from his --[,]" appellant interrupted to say, "No. No, that happened earlier." The detectives responded to this statement by asking appellant, "So, in that moment in time --[,]" and appellant shook his head to indicate "no." These statements to police, describing appellant's view of what was apparent to him at the time he shot Mohammed, unequivocally negate the finding that he perceived an imminent threat at that time.

Our case law on self-defense is clear: it is the moment at which a defendant resorts to force that we must look to for evidence of an overt, threatening act and a reasonable fear of death or great bodily harm. Hines, relied upon by the majority, illustrates this principle. In Hines, our Supreme Court concluded that the defendant "exercised his right to defend himself, his family, and his home with appropriate force" when he shot and killed a man who had been drinking, was belligerent, and brandished a gun in front of the defendant and his wife and sister. Hines, 292 Va. at 681, 791 S.E.2d at 566. The defendant had retreated to retrieve his own gun, and, when he returned to the victim's presence, the victim pointed his gun at the defendant. Id. At that point, the defendant, "fearing for his life, shot [the victim]." Id. The Court made clear that the moment at which the defendant used deadly force was the dispositive moment for their imminent danger analysis, because while the defendant "was concerned for the safety of his family members, his fear of imminent death or bodily injury from [the victim] arose when he returned to the room and

[the victim] pointed a gun at him."[10]  Id. at 680, 791 S.E.2d at 565-66.  Thus, when the Court made the statement relied upon by the majority—"when a party assaults a homeowner in his own home . . . , the homeowner has the right to use whatever force necessary to repel the aggressor"—the facts of Hines make clear that the assault at issue was the victim's act of pointing a gun at the defendant *immediately prior to* the defendant's use of deadly force.[11]  Id. at 679, 791 S.E.2d at 565.

Sands further illustrates the requirement for an overt act indicative of imminent death or great bodily harm, the danger of which must be reasonably apparent to the defendant *at the moment he acts in self-defense*.  In that case, the Supreme Court reversed this Court and reinstated the defendant's conviction for first-degree murder of her husband.  Sands, 262 Va. at 725, 731, 553 S.E.2d at 734, 737.  The defendant had long suffered abuse at her husband's hands, including physical assaults and death threats in the hours leading up to the fatal shooting.  Id. at 725-27, 553 S.E.2d at 734-35.  After the last assault, the defendant carried a gun into the bedroom where her husband was in bed, watching television.  Id. at 728, 730 n.2, 553 S.E.2d at 735, 737 n.2.  Her husband asked her, "What are you doing[?]," and the defendant shot him five times.  Id. at 728, 553 S.E.2d at 735-36.  The trial court refused the defendant's jury instruction on self-defense, finding that there was insufficient evidence for such an instruction, and this

---

[10] In enunciating the principle that we must look to the defendant's viewpoint "at the time of the incident"—*i.e.*, the moment when force was used—to determine whether there was an imminent and reasonably apparent danger, the Court in Hines relied upon McGhee v. Commonwealth, 219 Va. 560, 248 S.E.2d 808 (1978).  See Hines, 292 Va. at 679, 791 S.E.2d at 565 (citing McGhee, 219 Va. at 562, 248 S.E.2d at 810).  McGhee in turn relied upon Harper v. Commonwealth, 196 Va. 723, 731, 85 S.E.2d 249, 254 (1955), which makes the principle even more clear.  ("What reasonably appeared to the accused *at the time of the shooting*, as creating the necessity for his act, is the test." (emphasis added) (quoting Taylor v. Commonwealth, 185 Va. 224, 227-28, 38 S.E.2d 440, 441 (1946))).

[11] Hines is factually distinguishable from the instant case in that, as noted above, there is no evidence of any assault by Mohammed at the moment appellant fired his rifle.

- 20 -

Court held that the refusal was error. Id. at 728, 553 S.E.2d at 736. In reversing this Court, the Supreme Court concluded that "the Court of Appeals construed the term 'imminent' to mean something less than 'immediate.'" Id. at 730, 553 S.E.2d at 736. While it agreed that, based upon the long history of abuse, the defendant reasonably believed she was in danger of serious bodily harm or death when she shot her husband, the Court determined that "[n]evertheless, that reasonable belief is not dispositive of the issue . . . . The question here is whether the circumstances immediately surrounding the killing, specifically, the actions of the defendant's husband *at that time*, were sufficient to create a reasonable belief of an imminent danger which had to be met." Id. at 730, 553 S.E.2d at 737 (emphasis added). The Court concluded that even when viewed in the light most favorable to the defendant, the evidence "fail[ed] to reveal any overt act by [the defendant's] husband that presented an imminent danger *at the time of the shooting*." Id. (emphasis added). Consequently, the defendant was not entitled to a jury instruction on self-defense. Id. The Court also made clear that "[t]he requirement of an overt act indicative of imminent danger ensures that the most extreme recourse, the killing of another human being, will be used only in situations of necessity." Id. at 731, 553 S.E.2d at 737.

Imminent danger means nothing less than immediate danger. Immediate danger must be signaled by an overt act. That act must make the immediate danger so apparent to a defendant that he reasonably believes he must meet it with the use of force. I respectfully disagree with the majority that in the instant case, more than a scintilla of evidence supports finding that there was

- 21 -

such an act or apparent danger at the moment when appellant shot Mohammed.  Consequently, I

find no error by the trial court in refusing to give appellant's self-defense jury instruction.[12]

---

[12] In light of this conclusion, I would reach appellant's third assignment of error with respect to excluded evidence and cross-examination at sentencing.  I would find no error by the trial court, for the reasons advanced by the Commonwealth on brief—with one exception. Appellant argues, in part, that the trial court erred in denying him the opportunity to cross-examine Mohammed's sister about his employment record.  However, appellant never presented this argument to the trial court, and conceded during oral argument that he "did not make a specific objection" on the employment matter.  Thus, that issue was not preserved for appellate review.  See Rule 5A:18; Masika v. Commonwealth, 63 Va. App. 330, 333, 757 S.E.2d 571, 572 (2014) ("The Court of Appeals will not consider an argument on appeal that was not presented to the trial court." (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998))).