COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Causey and White

ANGELA MARIE HOUCHENS

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0082-24-2                 JUDGE KIMBERLEY SLAYTON WHITE
                                                    DECEMBER 17, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Bryan Jones; Bryan J. Jones, LLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Allison M. Mentch, Assistant
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Angela Marie Houchens for damaging the

vehicle of another as a principal in the second degree in violation of Code § 18.2-146. The trial

court sentenced Houchens to two years of imprisonment, all suspended. Houchens argues that the

trial court erred in granting a jury instruction on concert of action and in denying her motion to

strike the evidence. After examining the briefs and record in this case, the panel unanimously holds

that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). We affirm the judgment of the trial court.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On October 30, 2022, Douglas Smythers's white Ford pickup truck was parked in the lot outside Crutchfield Corporation headquarters in Albemarle County, where he worked. Smythers routinely left his truck parked there and moved it to different parking spaces in the lot occasionally. The headquarters contained a call center and warehouse and did not receive or serve retail customers.

When he started his truck to move it on October 31, 2022, Smythers discovered that the catalytic converter was missing from the vehicle. The cost to replace the missing equipment was between $800 and $900.

Security camera footage from the parking lot at the Crutchfield facility showed Houchens's red Toyota enter the parking lot at 8:07 on the morning of October 30, 2022, when the business was closed. Video of the car as it entered the driveway at Crutchfield, as well as a still photograph from the video, clearly displayed Houchens in the passenger seat, a male driver, and the license plate of the car. Houchens's eyes were open, and she appeared to be awake when they arrived at the property. The parking lot was deserted—except for Smythers's truck and one other car. Houchens's car proceeded directly to Smythers's truck and stopped immediately beside it; Houchens's car remained in the spot for about five minutes, then pulled away.[1] Smythers reported the theft of the catalytic converter to the police and provided the security camera footage.

Using the license plate of the red vehicle shown in the video, Officer Laura Proffitt learned that it was registered to Houchens and Dustin Wise, who was Houchens's boyfriend. By telephone

---

[1] The distance between the security camera and the two vehicles makes it difficult to discern what activity occurred while Houchens's car was stationary.

on November 8, 2022, Houchens initially denied that she had been at the Crutchfield headquarters and claimed that she knew nothing of the incident. To this claim, Officer Proffitt responded that the surveillance video clearly showed Houchens in the car. Houchens then said that she had been asleep in the passenger seat of the vehicle. Officer Proffitt responded that Houchens's eyes were open in the video and she was "definitely awake." Houchens then said that the driver of the car, Brian Tichner, was in the parking lot to "go to the bathroom," though there was no bathroom available there. Houchens did not explain why she and Tichner stopped immediately beside Smythers's truck. Nor did Houchens then assert that she had a migraine headache that morning or that they were going to obtain medication for the condition, claims she later made.

Detective Jordan Weethee, who was experienced in investigating thefts of catalytic converters, testified that it was a crime that can be accomplished quickly. The detective explained that stealing a catalytic converter required the thief to crawl under the vehicle and cut the item from the vehicle using a saw that is "often loud." Detective Weethee testified that in the process the thief would be "exposed under the vehicle" and unable to see or hear anything around because of the noise. A truck like Smythers's was a prime target for catalytic converter theft because it sat higher off the ground, giving the perpetrator room to operate underneath it. Detective Weethee said that catalytic converters "contain rare precious metals" making theft of those devices "profitable."

In conversations with Detective Weethee, Houchens said that Tichner had done repair work on her car and was test driving it when they reached the Crutchfield facility. Houchens said it was rumored that Tichner had been stealing catalytic converters and having his girlfriend rent cars for him to avoid his identification in the crimes. In a recorded phone call in August 2023, after her indictment, Houchens mentioned that she had a migraine headache when they arrived at Crutchfield headquarters and that they were going to obtain some pills for her condition.

Testifying in her own behalf, Houchens said that Tichner, who was a friend of her boyfriend, fixed the starter on her car on the evening of October 29, 2022. After Tichner completed the work on the morning of October 30, 2022, he and Houchens test drove the car to ensure that it was working properly. Houchens said her head hurt because of a migraine and she wanted to go home. She claimed that she was "half awake" when Tichner drove into the deserted parking lot at Crutchfield. According to Houchens, Tichner stopped near another vehicle, said he was going to the bathroom, and got out. Houchens said she did not see or hear anything while Tichner was outside for three to five minutes, he did not ask her to serve as a lookout, and he did not put anything in the trunk of the car afterward. Houchens said she did not turn around and watch what Tichner did outside the car, and claimed she heard nothing as well.

A jury convicted Houchens of damaging the vehicle of another as a principal in the second degree. Houchens appeals.

ANALYSIS

I. The Jury Instruction

Over Houchens's objection, the trial court instructed the jury:

> If there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.

Houchens argues that the trial court erred in granting a jury instruction on concert of action. Specifically, she contends that there was no evidence of a criminal plan between her and Tichner or that they shared a criminal intent.

Generally, "the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 264 (2018)). "The

- 4 -

trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *Id.* (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)). "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

Contrary to Houchens's contention, the Commonwealth was not required to prove the existence of a plan to commit the resulting crime to establish concert of action. As the Supreme Court of Virginia has stated,

> [a]ll those who assemble themselves together with an intent to commit a wrongful act, the execution whereof makes probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime. Hence, it is not necessary that the crime should be a part of the original design; it is enough if it be one of the incidental probable consequences of the execution of that design, and should appear at the moment to one of the participants to be expedient for the common purpose.

*Carter v. Commonwealth*, 232 Va. 122, 126-27 (1986) (quoting *Brown v. Commonwealth*, 130 Va. 733, 738 (1921)).

The concert of action instruction given by the trial court correctly stated Virginia law. *See Davis v. Commonwealth*, 36 Va. App. 291, 294 (2001); *see also Spradlin v. Commonwealth*, 195 Va. 523, 528 (1954). The evidence at trial showed that Houchens arrived at the deserted Crutchfield facility in her vehicle with Tichner and they drove directly to Smythers's vehicle and stopped beside it. After Houchens's car remained there for about five minutes, it left the scene immediately. Smythers discovered that his catalytic converter was missing the next day. The evidence thus supported the instruction permitting the jury to find that Houchens acted in concert

- 5 -

with the vehicle's driver in accomplishing the theft of Smythers's catalytic converter. We find no abuse of discretion in the trial court's decision to grant the instruction on concert of action.

## II. Sufficiency of the Evidence

Houchens challenges the sufficiency of the evidence to support her conviction. At the time of the charged offense, Code § 18.2-146 provided that "[a]ny person who shall individually or in association with one or more others willfully break, injure, tamper with, or remove any part or parts of any vehicle . . . by breaking, injuring, tampering with, or remov[ing] . . . a catalytic converter . . . is guilty of a Class 6 felony." 2022 Va. Acts chs. 664, 665. Houchens argues that there was no evidence that she committed an overt act in furtherance of the crime.

"In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "Under the governing standard, 'we review factfinding with the highest degree of appellate deference.'" *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). Accordingly, "[i]n conducting [its] review, the Court defers to the [jury's] findings of fact unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). "This deference is owed to both the [jury's] assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). Our deferential standard of review also "'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn"'" from that evidence." *Green*, 72 Va. App. at 200 (alteration in original) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "In the end, the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

When assessing whether the circumstantial evidence excludes a reasonable hypothesis of innocence, the Commonwealth, "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Moseley*, 293 Va. at 464 (quoting *Hudson*, 265 Va. at 513). "[T]he factfinder determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Id.* "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004))).

"A principal in the second degree . . . is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372 (1967)). A "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." *Allard v. Commonwealth*, 24 Va. App. 57, 62 (1997). "A person assisting his

confederate to commit a crime is accountable for all crimes committed by the confederate in furtherance of the criminal enterprise . . . ." *Owens v. Commonwealth*, 54 Va. App. 99, 104 (2009) (quoting *Jones v. Commonwealth*, 15 Va. App. 384, 387 (1992)). While the Commonwealth must prove that the offense was committed by the principal in the first degree to sustain a conviction of a principal in the second degree, *see Sutton v. Commonwealth*, 228 Va. 654, 665 (1985), proof of "actual participation in the commission of the crime is not necessary" "to make a person a principal in the second degree," *Muhammad*, 269 Va. at 482 (quoting *Jones*, 208 Va. at 372). To support a conviction under this theory, the Commonwealth must prove that the accused was present at the crime scene and shared the criminal intent of the perpetrator or committed some act in furtherance of the offense. *See Allard*, 24 Va. App. at 62. Thus, while mere presence at the scene of a crime alone does not constitute aiding and abetting, "accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime." *Pugliese v. Commonwealth*, 16 Va. App. 82, 94 (1993).

The video evidence proved that Houchens went to the Crutchfield location with another person when the facility was closed and the parking lot was deserted. Houchens was awake and apparently alert. They proceeded directly to Smythers's truck and parked beside it, one of only two vehicles in the lot. Houchens's car remained there for about five minutes. Detective Weethee explained that catalytic converter theft can be accomplished quickly, but that the perpetrator is vulnerable during the crime because he cannot see or hear what is happening around him. The detective further explained that the theft is accomplished with the use of a loud saw. After about five minutes, Houchens and the driver left. Smythers discovered that his catalytic converter was missing the next day.

The jury was entitled to credit the Commonwealth's evidence and to reject Houchens's testimony that she did not see or hear what the driver of her car did while the vehicle was parked beside Smythers's truck. "The sole responsibility to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "That responsibility lies with the fact finder because '[t]his [C]ourt[,] sitting as an appellate court, and knowing nothing of the evidence or of the witness, except as it appears on the paper, . . . [is] incompetent to decide on the credibility of the testimony.'" *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (first, second, and third alterations in original) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 769, 777 (1839)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal h[er] guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

When questioned by the police, Houchens repeatedly changed her story. First, she denied visiting the Crutchfield facility altogether. When confronted with video showing her there, she falsely claimed she was asleep at the time. Then, she asserted that they went to the parking lot so that Tichner could use the bathroom. Only later did Houchens claim that she and Tichner were test driving her car after a repair, that she was suffering from a migraine that morning, that they were going to pick up medication, and that she did not see or hear anything that occurred while Tichner was out of the car. Considering all the facts and circumstances, a reasonable finder of fact could conclude beyond a reasonable doubt that Houchens acted as a lookout while Tichner stole the catalytic converter from Smythers's truck and that she was guilty of the crime as a principal in the second degree.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*