COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Athey and White
Argued at Salem, Virginia


RAYMOND TRAVIS SWINSON, SR.

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0351-22-3              JUDGE KIMBERLEY SLAYTON WHITE
                                                     JANUARY 31, 2023
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                             Paul A. Dryer, Judge

           Jennifer T. Stanton, Senior Assistant Public Defender (Virginia
           Indigent Defense Commission, on briefs), for appellant.

           Craig W. Stallard, Senior Assistant Attorney General (Jason S.
           Miyares, Attorney General, on brief), for appellee.


        Raymond T. Swinson, Sr., ("Swinson") appeals his conviction, following a jury trial, for

possession with the intent to distribute methamphetamine, in violation of Code § 18.2-248(C),

for which he was sentenced to ten years with seven suspended, and two years of supervised

probation.  Swinson argues the trial court erred in denying his motion in limine to exclude the

evidence because the police obtained it in violation of Code § 46.2-1003(C).  He contends that

subsection (C) of Code § 46.2-1003, which took effect March 1, 2021, applied retroactively, and

rendered inadmissible the evidence the police seized in 2019.  He also contends that the court erred

in refusing his model jury instruction.  Finally, he argues that the evidence was insufficient to

support his conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Sufficiently similar statutes to Code § 46.2-1003 recently have been considered and decided regarding whether they apply retroactively. Accordingly, we conclude that the trial court did not err in denying the motion in limine. We assume without deciding that the trial court erred in refusing Swinson's jury instruction. However, applying the standard of review for non-constitutional error, we find such error harmless. In addition, we find the evidence sufficient to sustain Swinson's conviction. The judgment of the trial court is affirmed.

BACKGROUND

I. The Traffic Stop

On the evening of July 23, 2019, Deputy Smith of the Augusta County Sheriff's Department initiated a traffic stop for a car displaying what he believed to be a defective front bumper. Before the deputy could activate his lights or siren, the driver of the car stopped the car along the side of the road. Deputy Smith activated his lights and proceeded with the traffic stop. Swinson, who was the driver of the car, "jumped out and was on the cell phone." He moved back towards the trunk of the car and was "[v]ery amped up, fidgety, nervous, moving a lot." Deputy Smith told Swinson twice that he needed to get back in his car. Deputy Smith called for a canine backup and then proceeded with the traffic stop. Swinson's son, Raymond Swinson, Jr., was a passenger in the car.

Once the canine unit arrived, Swinson and his son were taken out of the car and the dog performed an "open air" search. The dog alerted to the possible presence of drugs in the car. Deputy Smith confronted Swinson and asked if he "had anything on him." In response, Swinson removed a cigarette pack from his shirt pocket which contained "two small bags with a crystal-like substance in each." A later analysis of the bags determined that the contents contained 4.35 grams of methamphetamine. A search of the car produced a pipe on the

floorboard of the passenger side of the car. No baggies, cash, or scales were found in the car during the search. Swinson did not have any excessive amounts of cash on his person.

After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Swinson told the deputy that he found the drugs and then later told them "that he had it sold already and was on the way to deliver it for $50."

## II. The Trial

## A. Motion in Limine

In a pre-trial hearing on the motion in limine, Swinson moved the court to exclude evidence obtained from the encounter, arguing that the stop of the car was in violation of Code § 46.2-1003(C).

The General Assembly added subsection (C) to Code § 46.2-1003 in November 2020, effective March 1, 2021. *See* 2020 Va. Acts Spec. Sess. I chs. 45, 51; *see also* Va. Const. art. IV, § 13 (providing effective date for laws enacted during special session); Code § 1-214(B) (same). The subsection provides that "[n]o law-enforcement officer shall stop a motor vehicle" for illegal use of defective or unsafe equipment. Code § 46.2-1003(C). Moreover, "[n]o evidence discovered or obtained as the result of" such a stop, "including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding." *Id.*

The trial court ruled that Code § 46.2-1003(C) created both "a substantive right" and "a procedural right." The court found that, substantively, motorists could not be stopped "for the sole reason of . . . defective equipment." Procedurally, "evidence obtained in violation" of that rule was "not admissible." The trial court also ruled that under Code § 1-239, it was not "practicable" to implement the "procedural change" to exclude evidence obtained during a stop "nearly two years before the effective date" of the statute. The trial court denied the motion in limine.

B.  Witness Testimony

Investigator Hilliard, qualified as an expert, testified that the quantity of drugs found would be sufficient for 40 hits and have a street value of over $400.  Hilliard also testified that an average user would consume between one-tenth of a gram and one gram per day.  Hilliard said that users typically store their drugs in a single bag, as opposed to multiple bags.  According to Hilliard, users will often purchase an "eight ball," or 3.5 grams, for personal use.  Hilliard described other indicia of intent to distribute would be the existence of "O sheets," or a list of what each individual owes for the drugs they buy.  He testified that in the past there would be an actual written list on paper but now the list is often in the distributor's cell phone.  As the police never confiscated Swinson's cell phone, there was no evidence recovered of a digital list nor of a paper list.

Elizabeth Wade, Swinson's daughter, testified that in July 2019, her father and brother, Ray, Jr., would often visit her and her three children.  They did so on July 23.  Previously, Wade had observed Ray, Jr. with drugs, describing him as a "junkie," saying "he would do anything he could get his hands on [drugs]."  Wade observed Ray, Jr. smoking meth the day before Swinson was arrested.  She had not seen her father use drugs before.

Swinson, a 53-year-old father of five with a seventh-grade education, testified on his own behalf.  He testified that he was on disability due to seizures he has suffered from since the age of 17.  Swinson testified that he walked "funny" because he had been kicked in the back "25 to 37 times" and had three chips in his back.  He also testified that the seizure disorder affects him in such a way that it makes him appear fidgety and extremely nervous.  Swinson confirmed that he and his son were driving from Harrisonburg to Chatham when they stopped at the Verona exit to use the bathroom.  When he got back in the car, Swinson noticed his son had a baggie in his hand and he took it from him, saying "What are you doing with that, boy?"  Swinson testified

that he was "freaking bad" and was wondering where his son got the stuff. Swinson testified that

he thought the baggies contained Epsom salt or "salt rock." Swinson told the jury that Ray, Jr.

had been known to sell fake drugs to people.

Swinson asserted that as soon as he saw a police cruiser following him, he pulled over to

turn the baggie over to them. Swinson testified that prior to the field test, he did know that the

baggie he retrieved from his son contained meth. Swinson also testified that when he was asked

by the officer what he intended to do with the drugs, he was joking when he said that he was

going to sell the drugs for $50. He also said that he told the officers that he found the drugs on

the ground at the motel to protect his son from any lability.

C. Jury Instructions

Additionally, Swinson proffered Virginia Criminal Model Jury Instruction 22.350, which

read in its entirety:

> To possess with intent to distribute requires that the defendant have
> intent to distribute at the time of possession. In determining
> whether there is possession with intent to distribute, you may
> consider all facts and circumstances, including but not limited to:
> the quantity possessed; the manner of packaging; the presence of
> an unusual amount of cash; the denomination of the cash
> possessed; the presence of equipment related to drug distribution;
> the presence or absence of drug paraphernalia suggestive of
> personal use; the presence of a firearm; the presence of a pager or
> electronic communications device; the conduct and statements of
> the defendant; the location at which the drugs were possessed; use
> of the drug by persons other than the defendant at the time it was
> seized; and the possession of more than one type of drug.
> Where the defendant possesses a small quantity of drugs you may
> infer that the defendant intends to possess the drugs for personal
> use. However, possession of a small quantity of drugs, combined
> with other facts and circumstances, may be sufficient to establish
> intent to distribute.

The trial court gave the instruction but took out some of the factors enumerated. The

court excluded: (1) the presence of an unusual amount of cash, (2) the denomination of the cash

possessed, (3) the presence of equipment related to drug distribution, (4) the presence of a

firearm, (5) the presence of a pager or electronic communications device, and (6) the possession

of more than one type of drug.

Finding that the removed items would have been confusing for the jury, the trial court

stated:

> The Court's view on it is - - and I get it's an extensive list but it
> does pose the difficulty that there are certain cases in which you're
> not going to have all of those indicia and it may then be confusing
> to the jury for them to say, "Oh, well, there wasn't the presence of
> a firearm", or, "There wasn't the presence of a pager or electronic
> device", so just going on the absence of one of those could be
> confusing to the jury. I think the evidence supports the instruction
> that the Court intends to give, which includes the indicia of
> distribution that were testified to either by Deputy Smith or
> Investigator Hilliard, or the defense's own evidence that would be
> suggestive of it. Your objection is duly noted.

The jury found Swinson guilty of possession with intent to distribute methamphetamine.

Swinson appeals.

## ANALYSIS

Swinson alleges three assignments of error with multiple subparts. They are that the trial

court erred by: (1) finding Code § 46.2-1003(C) does not apply retroactively, (2) denying

Swinson's motion to strike the possession with intent to distribute methamphetamine charge,

contesting the sufficiency of evidence for the knowledge and intent elements as well as

presenting a hypothesis of innocence, and (3) failing to give Virginia Criminal Model Jury

Instruction 22.350, regarding factors to be considered in determining intent to distribute, in its

entirety.

 I. The trial court did not err in finding that Code § 46.2-1003(C) does not apply
  retroactively.

The enactment of subsection C of Code § 46.2-1003 occurred after the date of Swinson's

traffic stop but before the date of his trial. Swinson argues that Code § 46.2-1003(C) is

procedural in nature, applies retroactively, and therefore prohibits the Commonwealth from

introducing any evidence discovered as a result of the stop. This Court's precedent compels us to disagree.

### A. Standard of Review

"When challenging the denial of a motion to suppress on appeal, the defendant bears the burden of establishing that reversible error occurred." *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). "Whether a statute should be applied retroactively is . . . a question of law that an appellate court reviews *de novo*." *Id.* at 304.

### B. Retroactivity Generally Disfavored

Under our common law "interpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest.'" *McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021) (alteration in original) (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003)); *see also Booth v. Booth*, 7 Va. App. 22, 26 (1988) ("[T]he general rule of statutory construction is that legislation only speaks prospectively."). "Every reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them." *Montgomery v. Commonwealth*, 75 Va. App. 182, 190 (2022) (quoting *Shilling v. Commonwealth*, 4 Va. App. 500, 507 (1987)). "[N]o Virginia case has ever held that a procedural amendment to a rule or statute applies to attach different legal consequences to a procedure that took place before the amendment. Even where an amendment to a law is procedural instead of substantive." *Id.* at 193.

### C. Code § 1-239 Applies to the Repeal of a Statute

Code § 1-239 generally prevents any court from interpreting a repeal as having a retroactive effect. Code § 1-239 provides:

No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect; except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings; and if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.

During oral argument, Swinson's counsel argued that *Montgomery* neglected to consider Code § 1-239. However, the analysis shows otherwise:

As Code § 1-239 makes clear, statutory changes that only affect procedure should "conform, so far as practicable, to the laws in force at the time of such proceedings." Code § 1-239 does not require courts to alter the legal consequences of a proceeding that has already taken place, but to instead look at the law at the time of the procedure and apply that law, no matter when the substance of any cause of action arose or criminal offense took place.

Indeed, no Virginia case has ever held that a procedural amendment to a rule or statute applies to attach different legal consequences to a procedure that took place before the amendment. Even where an amendment to a law is procedural instead of substantive, courts will not impliedly alter the legal consequences of a procedure that has already taken place at the time of the statutory change.

*Montgomery*, 75 Va. App. at 193.

### D. Our precedent precludes retroactivity here.

This Court recently examined whether a statute prohibiting police stops for expired registration applied retroactively to suppress evidence obtained in violation of the statute. Like Code § 46.2-1003(C), the statute in *Hogle v. Commonwealth*, 75 Va. App. 743 (2022), provided that any evidence obtained as a result of such an illegal stop or seizure was inadmissible in court. There we found that the exclusionary provision "did not entitle Hogle to the suppression of the

evidence obtained and discovered as a result of the stop of his vehicle in 2019 because the subsection, by its express terms, did not apply retroactively to the time of the stop." *Id.* at 752. In *Montgomery*, we found that Code § 18.2-250.1(F), which concerned a search on the basis of the odor of marijuana and has since been repealed, did not apply to a search that the police conducted before the effective date of the subsection, which also provided that any evidence obtained as a result of such an illegal stop or seizure was inadmissible in court. *Montgomery*, 75 Va. App. at 200.

Provided the stop of Swinson's car based upon defective equipment would be unlawful under the current Code § 46.2-1003(C), that provision did not take effect until March 1, 2021. When Deputy Smith stopped Swinson in July of 2019, the evidence uncovered was not "'the result of a stop in violation of th[e] subsection' 'because one cannot violate a statute or break a rule that does not exist. Because the [subsection] was not in effect at the time of the search, no law enforcement officer could have violated it.'" *Hogle*, 75 Va. App. at 751-52 (alterations in original) (quoting *Montgomery*, 75 Va. App. at 196).

In both *Hogle* and *Montgomery*, the same procedural argument was made and, as we concluded there, the illegal seizure prong of Code § 46.2-1003(C) "is not procedural as it is completely silent on the method of obtaining redress or the enforcement of the right it creates; instead, the scope of the entire [subsection] is both substantive and procedural." *Id*. at 752 (alteration in original) (quoting *Montgomery*, 75 Va. App. at 199). Thus, the seizure prohibition in Code § 46.2-1003(C) "is a substantive change in the law and cannot be applied retroactively to render" the stop of Swinson's car illegal, because "the evidentiary prong of the statute, though procedural, is only triggered by a . . . seizure that violated the substantive portion of the statute." *Id.* (alteration in original) (quoting *Montgomery*, 75 Va. App. at 199).

The exclusionary provision of Code § 46.2-1003(C) thus did not entitle Swinson to the suppression of the evidence obtained and discovered as a result of the stop of his vehicle in 2019 because the subsection did not apply retroactively to the time of the stop.

II. The Commonwealth provided sufficient evidence on all elements for any reasonable trier of fact to find Swinson guilty of possession with intent to distribute methamphetamine.

Swinson contends that the trial court erred in (1) finding that he had knowledge of the drugs, (2) finding that had the intent to distribute the drugs, and (3) rejecting his reasonable hypothesis of innocence. Swinson's assignments of error challenge the sufficiency of the Commonwealth's evidence.[1] Code § 18.2-248(A) provides that it is "unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance."

A. Standard of Review

When reviewing whether the sufficiency of the evidence supports a conviction, the evidence is viewed in the light most favorable to the Commonwealth including "all reasonable inferences fairly deducible therefrom." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Singleton v. Commonwealth*, 278 Va. 542, 548 (2009)). Accordingly, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). Additionally, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

_____

[1] In Swinson's third assignment of error, he alleges that the trial court erred by denying his motion to strike the possession with intent to distribute methamphetamine charge with three subcategories contesting knowledge, intent, and the rejection of his hypothesis of innocence that he did not possess the drugs for personal use.

- 10 -

support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## B. Knowledge

Swinson argues that the evidence is insufficient to prove that he had knowledge of the nature and character of the substance on his person. "[T]he Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Maxwell v. Commonwealth*, 275 Va. 437, 442 (2008) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "Actual or constructive possession alone is not sufficient." *Young v. Commonwealth*, 275 Va. 587, 591 (2008) (citing *Burton v. Commonwealth*, 215 Va. 711, 713 (1975)). "Such knowledge may be shown by evidence of the acts, statements or conduct of the accused." *Id.*

When Deputy Smith asked if he "had anything on him," Swinson immediately handed over a cigarette pack containing two small baggies of methamphetamine. After being advised of his rights, Swinson told law enforcement that he found the drugs and "that he had sold it already

- 11 -

and was on the way to deliver it for $50." These facts clearly indicate that Swinson knew the baggies contained methamphetamine or another controlled substance.

## C. Intent

Swinson contends that the evidence was insufficient to show that he intended to distribute the drugs. "[F]or a defendant to be convicted of possession of a controlled substance with the intent to distribute, the Commonwealth must prove that the defendant possessed the controlled substance contemporaneously with his intention to distribute that substance." *Stanley v. Commonwealth*, 12 Va. App. 867, 869 (1991). Intent to distribute is reasonably established by the direct admission of a defendant, alternatively by circumstantial evidence. *Cole*, 294 Va. at 361.

Investigator Hilliard testified that Swinson possessed more than four times the amount of drugs a typical methamphetamine user would possess. The drugs were possessed in two bags, one containing a smaller amount being estimated as worth $50. Further, Swinson stated that he had already sold the drugs for $50 and that he was on his way to deliver them. Considered in the light most favorable to the Commonwealth, this evidence was sufficient to establish Swinson's intent to distribute methamphetamine.

## D. Hypothesis of Innocence

Finally, Swinson contends that the trial court erred in rejecting his reasonable hypothesis that the drugs were not for his personal use. "'By finding [a] defendant guilty, therefore, the factfinder "has found by a process of elimination that the evidence does not contain a reasonable theory of innocence."'" *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alteration in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). The fact finder "was at liberty to disbelieve [the defendant's] self-serving explanation as a mere effort at 'lying to conceal his guilt.'" *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004) (quoting

- 12 -

*Commonwealth v. Duncan*, 267 Va. 377, 385 (2004)). A reasonable fact finder could conclude that Swinson's changing stories, including that he found the baggies by the motel, that he thought it was Epsom salts, and finally that he took it from his son, was evidence that he was lying to conceal his guilt. Therefore, the evidence was sufficient to support the jury's rejection of Swinson's hypothesis of innocence and to support his conviction for distribution of methamphetamine.

> III. We assume without deciding that the trial court erred by failing to give defense's proposed jury instruction in its entirety but find that the error was harmless.

Swinson argues that the trial court erred by refusing to give an instruction (Virginia Criminal Model Jury Instruction 22.350), in its entirety, regarding factors to be considered in determining intent to distribute. He points to the fact that the court's instruction only retained factors that were present in evidence, and removed those which were not, potentially misleading the jury. Additionally, the lack of such factors in evidence was a key element of Swinson's defense. However, even when the instruction was refused in error, this Court must decide whether that error was harmless before reversing the conviction. Code § 8.01-678. Assuming without deciding that the trial court erred in refusing Swinson's jury instruction, that alleged error was harmless in this case.

A. <u>Standard of Review</u>

When reviewing non-constitutional error, we apply Code § 8.01-678 which states in relevant part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

However, if the court "'cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that [the appellant's] substantial

rights were not affected' and the conviction must be reversed." *Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016) (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)). Harmless-error review is not a sufficiency-of-the-evidence analysis. *Commonwealth v. White*, 293 Va. 411, 422 (2017). However, a non-constitutional error is found harmless when "the evidence of guilt [is] so overwhelming that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Commonwealth v. Kilpatrick*, ___ Va. ___, ___ (Aug. 4, 2022).

This Court's objective in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Dorman v. State Indus. Inc.*, 292 Va. 111, 125 (2016) (quoting *Cain v. Lee*, 290 Va. 129, 134 (2015)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). Although, "[a]s a general rule, the matter of granting or denying jury instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (second and third alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 264 (2018)). "[I]f there is evidence in the record to support the defendant's theory of defense, the trial judge *may not refuse to grant a proper, proffered instruction*." *Id.* at 680 (quoting *King v. Commonwealth*, 64 Va. App. 580, 587 (2015) (en banc)). However, "a jury verdict based on an erroneous instruction need not be set aside if it is clear that the jury was not misled." *Riverside Hosp., Inc. v. Johnson*, 272 Va. 518, 537 (2006).

Typically, on appeal, we review the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). However, when "the trial court refused to grant the instruction proffered by the accused, we view the facts in the

light most favorable to the defendant." *Avent v. Commonwealth*, 279 Va. 175, 202 (2010) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). We therefore view the evidence in the light most favorable to Swinson.

      B. <u>The trial court's potential error in refusing Virginia Criminal Model Jury Instruction 22.350, in its entirety, was harmless.</u>

Swinson contends the trial court erred by failing to give Instruction 22.350 in its entirety because the instruction as given wrongly emphasized only the factors that were present and omitted those which were not. Evidence used to establish the intent to distribute is not an exhaustive list. *Wright v. Commonwealth*, 278 Va. 754, 760 (2009). The Commonwealth need not show proof of all the factors, and the absence of certain factors does not mean that the intent to distribute cannot be established. Accordingly, even when viewed in the light most favorable to Swinson, *Avent*, 279 Va. at 202, the weight of the evidence strongly indicates that a jury would have found Swinson guilty of possession of methamphetamine with intent to distribute even if the jury instruction was introduced as submitted.

Given Swinson's statements and actions affirming his knowledge of the drugs, admitting that he already had sold them, and declaring his intention to deliver them, we find that it "plainly appears" Swinson "had a fair trial on the merits." Code § 8.01-678. The overwhelming admissible evidence of Swinson's guilt for the possession of methamphetamine with the intent to distribute requires us to conclude that the alleged "error did not influence the jury[] or had but slight effect," and was therefore harmless. *Clay*, 262 Va. at 260 (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

CONCLUSION

We find that the amendment of Code § 46.2-1003 does not apply retroactively, therefore the stop and search of Swinson was permissible. Any possible error in failing to give Swinson's model jury instruction was harmless considering the "overwhelming" evidence presented of

Swinson's guilt.  *Kilpatrick*, ___ Va. at ___; *Riverside*, 272 Va. at 537.  We find that the trial court did not err in denying the motion to suppress and in finding that the evidence was sufficient to prove Swinson's guilt beyond a reasonable doubt.  Therefore, we affirm.

*Affirmed.*