COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Causey and Bernhard

CALVIN C. JENKINS

v.      Record No. 1185-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 23, 2025

FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Joseph M. Teefey, Jr., Judge

(M.G. Henkle; Henkle Law Firm, on brief), for appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Sabina B. Thaler, Assistant Attorney General, on brief), for appellee.

Following a jury trial, the trial court convicted Calvin C. Jenkins of malicious wounding and sentenced him to 13 years of imprisonment. Jenkins's five assignments of error include (i) the trial court's denial of his attorney's motion to withdraw and refusal to allow Jenkins to represent himself, (ii) the trial court's refusal to submit his jury instructions on self-defense, (iii) challenges to the sufficiency of the evidence to sustain his conviction, (iv) the trial court's decision to proceed to trial even though only some of his witnesses were present,[1] and (v) the trial court's abuse of its discretion in imposing a 13-year sentence. We find no error and affirm the judgment.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Considering appellant's failure to preserve this objection, he seeks an "ends of justice" exception under Rule 5A:18. *See infra* Analysis (Assignments of Error I and IV).

[2] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1 403(ii)(b); Rule 5A:27(b).

# BACKGROUND[3]

## Pretrial Proceedings

By warrant, Jenkins was charged with malicious wounding of Albert Sweeney in violation of Code § 18.2-51. At an October 19, 2022 preliminary hearing, the General District Court of Nottoway County found probable cause that Jenkins committed the offense and certified the charge to the grand jury. Attorney Gordon Peters represented Jenkins at the preliminary hearing.[4]

The trial court appointed Peters to represent Jenkins. A Nottoway County grand jury indicted Jenkins for malicious wounding on November 1, 2022. At a November 28, 2022 hearing, Jenkins elected a jury trial, but asked the trial court to appoint him a new attorney. Jenkins specifically requested the trial court to appoint Marlene Harris as his attorney. The trial court denied Jenkins's request, noting that Peters could "file an appropriate motion." Jenkins's case was continued to January 3, 2023, to be scheduled for a jury trial.

At a hearing on January 9, 2023, Jenkins again requested appointment of replacement counsel. The trial court ordered Peters to file a motion and order permitting him to withdraw and appointed M.G. Henkle as Jenkins's lawyer to replace Peters. The trial court set a jury trial date of May 10, 2023.

---

[3] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[4] The court's order also notes the name "Spence" in the blank for incurred costs for a court-appointed attorney. At a subsequent hearing in the trial court, Peters indicated that Jenkins originally was represented by Ben Spence, but a conflict of interest was discovered, and Peters took over the case.

The parties appeared for trial on May 10, 2023. The Commonwealth's witnesses were present, and the prosecutor was ready to move forward with trial. Citing the need for further investigation, and potentially issuing witness subpoenas for individuals who were patients at or associated with the Virginia Center for Behavioral Rehabilitation (VCBR), the defense moved for a continuance. Henkle identified Travis Cross as a potential defense witness. Cross had been a patient at VCBR, but he was no longer at the facility and his whereabouts were unknown. Jenkins had also identified a former VCBR employee as a witness, but Henkle did not know that person's whereabouts. The trial court continued the case to July 7, 2023, to set a jury trial.

Citing disagreements with Jenkins and Jenkins's desire to represent himself, Henkle moved to withdraw as counsel. Emphasizing Henkle's experience as a criminal defense attorney, the trial court denied Henkle's motion to withdraw and advised Jenkins to cooperate with Henkle. The case was later set for a jury trial on January 9, 2024.

Before trial began on January 9, 2024, the trial court arraigned Jenkins and he pleaded not guilty. The trial court asked if Jenkins's witnesses were present. Jenkins said yes, but that Henkle had said all the witnesses were not there. Henkle stated that only two of his six subpoenaed witnesses were present.[5] One of them had the same name as a person Jenkins wanted as a witness, but was not the person in question.

When asked if he would like to continue the matter, Henkle said that Jenkins stated he would like to represent himself with Henkle serving as standby counsel. After the trial court allowed Henkle and Jenkins to confer, Jenkins stated, "I'm going to go forward. I don't know what about to happen, but you say all my witnesses ain't there. But I'm going to go for it." Jenkins reiterated that he wanted a jury trial and to testify in his own behalf.

---

[5] Later, during voir dire of the jury, the defense identified Sonita Rhoades as a witness, and she was present in court.

- 3 -

When the trial court asked if he wanted to represent himself or have Henkle conduct the trial, Jenkins responded, "I thought we were working together." Jenkins acknowledged that with Henkle trying the case, he would call Jenkins to the witness stand to answer Henkle's questions about the incident, rather than Jenkins simply offering his narrative of the events. Henkle commented that his relationship with Jenkins had deteriorated and Jenkins had expressed dissatisfaction with Henkle's defense of him.

Returning to the question of whether Jenkins wished to represent himself or have Henkle as standby counsel, Jenkins said, "I want . . . him to represent me, but I want him to help me. Not represent me and hurt me." He expressed his wish to testify and "tell why [he] did what [he] did" and the reasons that "led up to this," even though his witnesses were not present. Jenkins continued, "Okay. He representing me . . . I also want to take the trial in [sic] my own behalf and tell what happened." The trial court responded that Jenkins could testify and it was his decision to make.

Jenkins asked Henkle, "You want to represent me, or you don't want to represent me?" Henkle noted that he would serve as Jenkins's attorney until removed by the court. Jenkins then stated, "I want you to be my attorney," and that he wanted to take the witness stand. Jenkins said he understood the process and that he would be subject to cross-examination by the Commonwealth if he elected to testify.

Trial

On July 30, 2022, Jenkins and Sweeney were both housed at the VCBR, a secured treatment facility for Virginia's sexually violent predator population. Both Jenkins and Sweeney had been at the facility for more than five but less than ten years, and there was no official history of major incidents between them.

At about 5:00 p.m. that day, Sweeney was seated at a table eating dinner with his back to Jenkins. Jenkins approached Sweeney from behind, reached around to the front of Sweeney's body,

and stabbed Sweeney in the chest and right shoulder. Jenkins used a sharpened butter knife to stab Sweeney. Afterward, Sweeney grabbed a chair and advanced toward Jenkins. An emergency response team arrived and surrounded Jenkins, separating him from Sweeney.[6] Sweeney sustained two stab wounds in the attack.

Sweeney testified that during the morning of the incident, Jenkins stopped by Sweeney's cell and asked Sweeney's cellmate for coffee. Sweeney gave Jenkins some coffee.

Sweeney testified that he had known Jenkins for years.[7] Sweeney said that he had encountered Jenkins while they were both in the Piedmont Regional Jail in 2017, but denied that he ever tried to have sex with Jenkins while they were there.[8] Sweeney said that during an argument in the jail about his interpretation of the Bible, Jenkins called Sweeney derogatory names, pulled out his penis, and shook it at Sweeney. Sweeney fought Jenkins in response and "beat him up real bad." But since then, Sweeney claimed, he and Jenkins had not had issues with one another.

Testifying for the defense, Eric Van said he had been in prison with Sweeney and knew that he expressed interest in having sex with men.

Jenkins testified that his problems with Sweeney began when they were assigned the same cell at Piedmont Regional Jail in 2017. Jenkins said that Sweeney hit him in the head 6 or 7 times using about 15 bars of soap inside a sock. Jenkins claimed that Sweeney then choked and bit him. Jenkins said he pulled himself under a bed to avoid Sweeney, who threatened to have sex with him. Jenkins said he complained to jail officials about Sweeney's conduct, but nothing happened.

---

[6] The Commonwealth introduced a video that recorded the event.

[7] Sweeney had several prior felony convictions.

[8] Sweeney denied that he was either bisexual or homosexual.

Jenkins claimed that once they both returned to VCBR, Sweeney spread rumors that Jenkins was "his boy" and they had sex while at Piedmont Regional Jail.[9] Jenkins added that because of Sweeney's lies, other people would ejaculate on Jenkins. Jenkins said that he exchanged angry words with Sweeney about the rumors, and he admitted stabbing Sweeney. He said that he did not stab Sweeney to kill him; Jenkins claimed he wanted only to "mark" Sweeney because "[Sweeney] marked [him] with his teeth" when he bit him and because Sweeney tried to rape him. He admitted that he gave Sweeney no warning and purposely stabbed Sweeney by surprise. Jenkins apologized for his actions and explained, "I ain't no punk faggot or bisexual or homo. I ain't none of that. Never will be . . . while I'm alive ain't nobody taking my bootie."

Finding no evidence to support them, the trial court refused Jenkins's proposed jury instructions on self-defense. The jury convicted Jenkins for malicious wounding.

Sentencing

At the sentencing hearing, Henkle asserted that Jenkins was born to a 13-year-old mother and was raised in part by his grandmother. During Jenkins's childhood, his step-father was physically abusive to both Jenkins and his mother. When Jenkins tried to protect his mother from the abuse, the step-father would put him "out on the street." The defense noted that Jenkins had significant health problems and required dialysis treatments. In addition, Jenkins was intellectually disabled and was poorly educated. Jenkins's last conviction for a violent sexual offense was in 1986. Jenkins asked the trial court to sentence him below the guidelines.

Following Jenkins's allocution, the trial court observed that he "carried out a revenge stabbing in a hospital for something that happened in a jail." The trial court sentenced Jenkins to 13 years of imprisonment. Jenkins appeals.

_____

[9] During his testimony, Jenkins mentioned that he had subpoenaed a "key witness" named "Silla," but claimed that he "ain't there no more."

- 6 -

ANALYSIS

Assignments of Error I and IV

Jenkins contends that the trial court erred in denying Henkle's motion to withdraw as counsel and refusing to permit Jenkins to represent himself. Jenkins also contends that the trial court erred in allowing the trial to proceed even though not all of his witnesses were present. Before trial began, however, the trial court held a lengthy colloquy with both Henkle and Jenkins about whether, and how, Jenkins wished to proceed. Jenkins expressly stated that he wished to proceed with the jury trial that day even though not all of his witnesses were present. Further clarifying his position about whether he wanted to represent himself or have Henkle represent him, Jenkins stated that he wished to testify in his own behalf and explain the background for his actions on July 30, 2022. After being advised that taking the witness stand was a decision he was entitled to make, further clarification of the procedure for that testimony, and discussion with Henkle, Jenkins stated unequivocally that he wanted Henkle to represent him at trial.

"The Supreme Court has held that '[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (alteration in original) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "The 'doctrine against approbation and reprobation' applies both to assertions of fact and law and precludes litigants from 'playing fast and loose' with the courts, or 'blowing hot and cold' depending on their perceived self-interests[.]" *Id.* at 403 (citations omitted) (quoting *Babcock & Wilcox v. Areva*, 292 Va. 165, 204-05 (2016)). Unlike the contemporaneous objection rule under Rule 5A:18, "there is no 'ends of justice' exception to the approbate and reprobate doctrine." *Id.* at 405.

Here, although he took inconsistent positions in the proceedings, on the day of trial, Jenkins ultimately agreed to proceed to trial without certain witnesses, to forgo his earlier request

to represent himself, and to have Henkle continue to represent him as his attorney. Thus, under the "approbate/reprobate" doctrine, we will not consider his claims of trial court error when he affirmatively agreed with them.

Assignment of Error II

Jenkins argues that the trial court erred in refusing to grant his proposed instructions on self-defense. "As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 264 (2018)). "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *Id.* (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc)). "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "[A]n instruction is proper only if supported by more than a scintilla of evidence." *Avent v. Commonwealth*, 279 Va. 175, 202 (2010) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)).

"Self-defense excuses or justifies a homicide or assault committed while repelling violence arrayed against the defendant. It is a response to the threat of death or serious bodily harm. It is a defense to an act of violence that repels violence directed at the defendant." *Graham v. Commonwealth*, 31 Va. App. 662, 672 (2000). To prove either justifiable or excusable self-defense, "a defendant must show that he . . . 'reasonably believed that [he] was in danger of serious bodily harm or death.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Sands*, 262 Va. at 730). He must also establish "'that he was in imminent danger of harm' by showing 'an overt act or other circumstance that affords an immediate threat to

- 8 -

safety.'" *Id.* (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Id.* (alterations in original) (quoting *Sands*, 262 Va. at 729).

In this case, there was no evidence that Jenkins's stabbing of Sweeney was in response to any threat of harm. To the contrary, the testimony and the video proved that the attack was wholly unprovoked. Jenkins approached Sweeney from behind, reached around his body, and stabbed him twice with a homemade knife. Jenkins himself testified that he attacked Sweeney purposefully, by surprise, and in retribution for a fight that occurred years before. Jenkins also stated that he was angry about Sweeney spreading false rumors about Jenkins's sexual orientation. Thus, the trial court did not abuse its discretion in finding that the self-defense instructions were not supported by a scintilla of evidence and in refusing them.

Assignment of Error III

Jenkins contends that the trial court erred in denying his motions to strike the evidence and asserts that the evidence was insufficient to support his conviction. He maintains that "the evidence as a whole showed the absence of malice, not its presence."

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

"The only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To sustain a conviction for malicious wounding under Code § 18.2-51, the Commonwealth must prove that the defendant "maliciously" shot, stabbed, cut, or wounded another person, "or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill[.]" "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). Malice "includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief." *Williams v. Commonwealth*, 13 Va. App. 393, 398 (1991). "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)).

As noted above, Jenkins planned his attack on Sweeney in retribution for an earlier fight where Sweeney beat him, as well as for Sweeney's insinuations that he had sex with Jenkins. Jenkins fashioned a sharp instrument and approached Sweeney from behind, stabbing him twice.

Although Jenkins testified that he did not plan to kill Sweeney, Jenkins nonetheless acknowledged that he wanted to "mark" him in retaliation. The facts and circumstances were sufficient for a reasonable finder of fact to conclude that Jenkins acted with malice and that he was guilty of the charged offense.

## Assignment of Error V

Jenkins argues that the trial court abused its discretion in imposing a 13-year sentence. He maintains that the sentence was arbitrary and unreasonable in light of his mitigating evidence.

"A Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771 (2007)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Id.* (quoting *Alston*, 274 Va. at 771-72).

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Jenkins's sentence was within the range permitted by statute. *See* Code §§ 18.2-10(c), -51. "It is within the trial court's purview to weigh any mitigating factors presented by the defendant . . . ." *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). "Appellant's sentence was within the statutory range, and our task is complete." *Id.*

To the extent that Jenkins argues that his sentence was disproportionate to his offense, we do not consider this contention. "No punishment authorized by statute, even though severe, is cruel and unusual unless it is one 'prescribing a punishment in quantum so severe for a comparatively trivial offense that it would be so out of proportion to the crime as to shock the conscience[.]'" *DePriest v. Commonwealth*, 33 Va. App. 754, 764 (2000) (quoting *Hart v. Commonwealth*, 131 Va. 726, 745 (1921)). This Court declines to engage in Eighth Amendment proportionality review in cases that do not involve life sentences without the possibility of parole. *See Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*